UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

GREI MENDEZ,

Defendant.

23-cr-504 (JSR)

OPINION

JED S. RAKOFF, U.S.D.J.

On May 22, 2024, the Court appointed new counsel for defendant Grei Mendez because her counsel from the Federal Defenders of New York had a conflict of interest. The disturbing circumstances that led to this change warrant further discussion -- hence, this Opinion.

I. **Factual Background**

On April 29, 2024, Ms. Mendez sent a pro se letter to the Court requesting a change of counsel, citing a disagreement she had with her lawyer, Clay Kaminsky, Esq. of the Federal Defenders, regarding her desire to speak with the Government. Upon receipt of that letter, the Court set a hearing for May 22, 2024, so that it could determine whether this disagreement necessitated a change of counsel. Then, on May 20, 2024, the Court received a letter from Ms. Mendez's counsel informing the Court that the Federal Defenders had a conflict of interest that required a change of counsel.

1

Accordingly, at the hearing on May 22, the Court made further inquiries, as a result of which the Court learned that the following had occurred more than eight months earlier in September of 2023.

On September 19, 2023, Ms. Mendez was arrested, and Mr. Kaminsky was appointed to represent her. Her co-defendant Renny Parra Paredes, however, was not arrested until early in the morning of Saturday, September 23, 2023, and no CJA counsel was on duty that day to represent him at his presentment.[1] That was because the prevailing practice in this judicial District is that CJA counsel are not required to be available to represent defendants on Saturdays. Instead, the Federal Defenders are asked to represent all defendants that need to be presented on Saturdays. On this particular Saturday, Martin Cohen, Esq. was the "on-duty" lawyer for the Federal Defenders.

In this instance, both the Government and Mr. Cohen immediately recognized that Mr. Cohen had a conflict of interest representing Mr. Parra Paredes because a different Federal Defenders lawyer, Mr. Kaminsky, was already representing his co-defendant, Ms. Mendez. Mr. Cohen accordingly informed Magistrate

---

[1] "CJA counsel" here refers to a panel of lawyers carefully selected by the Board of Judges of the Southern District of New York to represent indigent defendants, pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A, whenever the Federal Defenders of New York has a conflict.

Judge Willis, who was handling Mr. Parra Paredes's presentment, that the Federal Defenders had a conflict, and asked to be appointed for purposes of presentment only: itself a questionable practice but one that apparently has been routinely accepted in the past. However, unbeknownst to Mr. Cohen when he made this application to Judge Willis, Mr. Parra Paredes was in possession of highly time-sensitive information that the Government wanted: a phone number for another co-defendant Felix Herrera Garcia, who the Government believed was on the run after four children had allegedly suffered fentanyl poisoning at the daycare run by his wife, Ms. Mendez. The Government believed this phone number would help them locate and arrest Mr. Herrera Garcia. The Government thereupon informed Mr. Cohen that they wanted Mr. Parra Paredes to cooperate by providing Mr. Herrera Garcia's phone number and in return would give him credit for his assistance.

Although this presented an obvious ethical dilemma for Mr. Cohen, neither side informed Judge Willis of this development or of the fact that Mr. Cohen was being asked by the Government to advise Mr. Parra Paredes about something other than what was required to represent him at the presentment. Mr. Cohen initially sought to avoid the problem, or so he thought, by informing the Government and Judge Willis that Mr. Parra Paredes would consent to detention until Monday, at which time CJA counsel could be appointed for all purposes. The Government, however, informed Mr.

3

Cohen that this did not resolve the issue because the information that the Government was seeking would only be useful for an extremely limited time. Mr. Cohen then floated the idea of contacting the attorney who was on-duty CJA counsel for Monday, September 25, 2023, apparently in the hope that that attorney could be immediately appointed to represent Mr. Parra Paredes for all purposes, including advising Mr. Parra Paredes on whether or not to help the Government by providing Mr. Herrera Garcia's phone number. But even though the Government then located the contact information for that attorney and provided it to Mr. Cohen, Mr. Cohen was unable to reach Monday's CJA counsel. At some point, Mr. Cohen also asked the Government if waiving speedy presentment could resolve the issue, but the Government again indicated that it would not, as the information that Mr. Parra Paredes had would likely be useless by Monday.

    At this point, Mr. Cohen took matters into his own hands. He decided he had to do what he believed was best for Mr. Parra Paredes, as it was now or never for Mr. Parra Paredes to curry favor with the Government by cooperating. Accordingly, after speaking to Mr. Parra Paredes about the situation and obtaining his consent, Mr. Cohen obtained the phone number for Mr. Herrera Garcia from Mr. Parra Paredes and gave it to the Government. Speedy presentment of Mr. Parra Paredes was then waived until Monday; Mr.

Herrera Garcia was captured; and CJA counsel was appointed to represent Mr. Parra Paredes on Monday, September 25, 2023.

Neither the Federal Defenders nor the Government conveyed any of this information to the undersigned over the next eight months, despite the Court's holding multiple hearings in this case. It was only after Ms. Mendez, through her pro se letter to the Court, expressed dissatisfaction with her Federal Defender lawyer that any of the foregoing was so much as even hinted at by either side of the case, and it was only after the Court initiated its own inquiry that the foregoing facts emerged.

## II. Discussion

It is elementary that "[a]n attorney owes his client a duty of 'undivided loyalty.'" Discotrade Ltd. v. Wyeth-Ayerst Int'l, Inc., 200 F. Supp. 2d 355, 358 (S.D.N.Y. 2002) (quoting Cinema 5 Ltd. v. Cinerama, Inc., 528 F.2d 1384, 1386 (2d Cir. 1976)).[2] Here, the conduct of both the Federal Defenders and the Government ran roughshod over this fundamental principle. The Government, hungry for information about the whereabouts of Ms. Mendez's spouse, Mr. Herrera Garcia, pressed Mr. Cohen to skirt his ethical duty of loyalty to the Federal Defenders' other client, Ms. Mendez. And while the Court has a bit more sympathy for the Hobbesian choice that Mr. Cohen faced -- to help his "temporary" client Mr. Parra

---

[2] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, footnotes, and citations.

Paredes earn an immediate chance at leniency or maintain the Federal Defenders' duty of loyalty to Ms. Mendez -- he should never have allowed himself to be put in that position by serving as Mr. Parra Paredes's lawyer in any respect. At the very minimum, Mr. Cohen, having agreed to represent Mr. Parra Paredes for purposes of presentment only, should have made Judge Willis aware that he could no longer do so. The Court is certain that Judge Willis would have then undertaken all steps necessary to obtain non-conflicted counsel to represent Mr. Parra Paredes, thereby avoiding the conflict entirely.

Following the hearing before the Court on May 22, 2024, the Court invited counsel for both sides to submit papers seeking to justify their seemingly improper conduct described above. In response, the Government advanced the dubious position that there was no conflict because the information they sought from Mr. Parra Paredes through Mr. Cohen was not harmful to Ms. Mendez. This borders on the absurd. One can only imagine the conversation that Federal Defender Kaminsky would have had to have with his client, Ms. Mendez, trying to explain why, without any consultation with her, one of his Federal Defender colleagues had undertaken not only to represent a co-defendant in her case but also to obtain from the co-defendant and provide to the Government information leading to the capture of her co-defendant spouse, Mr. Herrera Garcia.

"[A]n attorney has an actual . . . conflict of interest when, during the course of the representation, the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action." United States v. Feyrer, 333 F.3d 110, 116 (2d Cir. 2003). There is no doubt in the Court's mind that Mr. Cohen's counseling Mr. Parra Paredes to cooperate with the Government created an actual conflict of interest with the Federal Defenders' pre-existing representation of Ms. Mendez, and that the Government knowingly solicited this conflict.[3]

Furthermore, based on the facts that have been proffered to the Court in connection with other motions in this case, the conflict appears even more extreme. Among other things, the Court understands that the Government's proof at trial would have shown that when Ms. Mendez found two of the children unresponsive in the daycare facility on September 15, 2023, she called Mr. Herrera Garcia before calling 9-1-1. In response, Mr. Herrera Garcia rushed into the daycare center, gathered up bags of evidence before the

---

[3] According to the Government, the Federal Defenders only raised with them the issue of an actual conflict of interest once a plea deal was offered to Mr. Parra Paredes in May of 2024. If the Federal Defenders, in fact, believed there was not an actual conflict until the plea deal was offered to Mr. Parra Paredes, that is also absurd for the reasons explained above. But in any case, since the Government was present on September 23, 2023 when Mr. Cohen informed Judge Willis that he could only represent Mr. Parra Paredes for presentment because the Federal Defenders also represented a co-defendant in the same case, the Government was already aware of the conflict when they solicited Mr. Cohen to obtain non-presentment information from Mr. Parra Paredes.

7

paramedics arrived, and then fled -- only to be caught because of the phone number that Mr. Parra Paredes provided to the Government.

It is therefore evident to the Court that Mr. Herrera Garcia's flight after the alleged crime at the daycare not only implicates him but also Ms. Mendez. Not only that, but given that Ms. Mendez is charged with entering a narcotics conspiracy with Mr. Herrera Garcia to possess and distribute narcotics that resulted in death and serious bodily injury to two minors, any actions that Mr. Herrera Garcia took after the start of the conspiratorial agreement are likely also admissible at trial against Ms. Mendez. It was thus not remotely in Ms. Mendez's best interests for Mr. Parra Paredes to cooperate and assist the Government in tracking down her husband, who only fled after she appears to have tipped him off as to what occurred in the daycare on September 15, 2023.

The Court is astonished that it took eight months before either side brought this situation to the Court's attention, and then only after the Court initiated its own inquiry. If the Court has been immediately alerted to what had occurred, the Court would have promptly appointed new counsel for Ms. Mendez, thereby avoiding a last-minute delay of the long-scheduled trial of her and her co-defendant that was set to start on June 10. Instead, the parties chose to sit on this information for months and months, and as a result the Court had no choice but to sever Ms. Mendez's trial so that her belatedly appointed new counsel could get up to

speed. Yet the legal ramifications of Mr. Cohen's conflicted representation, which the Government solicited, were clear on September 23, 2023, and remained clear every day thereafter.

### III. Conclusion

While the Court is extremely disappointed with the conduct of the Federal Defenders and the Government in this case, it also recognizes the role that this District's standing policy of not requiring CJA counsel to be on call on Saturdays had in precipitating the events of September 23, 2023. If this District, instead, had a standing policy that provided for CJA counsel to at least be on call on Saturdays, this entire situation would never have occurred. Accordingly, the Court has recommended to the relevant committee of this Court that it revise this policy so as to ensure that indigent defendants always have immediate access to conflict-free counsel and permanently prevent the misconduct that occurred here from happening again in the future.

Dated:    New York, NY

        June 13, 2024               JED S. RAKOFF, U.S.D.J.